UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

CIVIL ACTION NO. 06-72-KKC

JUDITH K. CLUBB,                                                                                                PLAINTIFF,


V.                            **MAGISTRATE JUDGE'S REPORT**
                              **AND RECOMMENDATION**


MICHAEL J. ASTRUE,
Commissioner of Social Security,                                                                    DEFENDANT.


I.  INTRODUCTION

Plaintiff, Judith K. Clubb, brought this action under 42 U.S.C. § 405(g) to challenge a final decision of the Defendant Commissioner denying Plaintiff's application for Disability Insurance Benefits ("DIB").  This matter has been referred to the undersigned for preparation of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  Now ripe for decision on the parties' motions for summary judgment, and for the reasons set forth herein, it is recommended that Plaintiff's motion for summary judgment [Record No. 14] be granted, Defendant Commissioner's motion for summary judgment [Record No. 15] be denied, and that this matter be remanded for further consideration consistent with this report and recommendation.

II.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed her first application for DIB on July 2, 2002, which was denied initially and on reconsideration.  [Tr. 22.]  At Plaintiff's request, an administrative hearing, presided over by

Administrative Law Judge Peter Davenport (hereinafter "ALJ"), was conducted and, in a written opinion on June 24, 2004, the ALJ denied Plaintiff benefits. [Id.] The decision of the ALJ was rejected by the Appeals Council. [Tr. 431-34.] In so doing, the Appeals Council directed the next ALJ receiving this case to obtain additional evidence concerning the claimant's impairments, reconsider the RFC assessment, with particular attention to be paid to weighing opinion evidence, and to obtain supplemental evidence from a VE as it concerns claimant's assessed limitations. [Tr. 432-33.] On March 9, 2005, ALJ Roger L. Reynolds conducted a second hearing. [Tr. 22.] Plaintiff appeared and testified at the hearing with the assistance of counsel, Greg Marks. [Id.] Also testifying was vocational expert Daryl Martin (hereinafter "VE"). [Id.] On July 12, 2005, the ALJ found Plaintiff not disabled under the regulations and denied benefits. [Id.] The Appeals Council declined on August 16, 2006, to review the ALJ's decision [Tr. 11] and Plaintiff now seeks judicial review.

Plaintiff was 49 at the time of the administrative hearing. [Tr. 23.] She has a high school equivalency degree and previously worked as a factory laborer, kennel supervisor and farm laborer. [Id.] Her alleged onset of disability is December 20, 2001, due to back problems and numbness in her feet, hands and left leg. [Id.]

Plaintiff has a long history of back and joint ailments, including numerous surgical procedures. Plaintiff underwent a lumbar laminectomy at L5-S1 in 1989 [Tr. 264], and a revision laminectomy of L5-S1 in 2002 [Tr. 213-15.] Also in 2002, Plaintiff underwent surgery on her shoulder. [Tr. 254-56.] In 2003, Plaintiff had surgical procedures performed on both of her wrists. [Tr. 323-24, 342-43.] During this period, Plaintiff also underwent other medical treatments for these ailments, including varied drug regimens, physical therapy, and treatment by a chiropractor.

[Tr. 151.] Overall, it appears that Plaintiff has at least nine treating physicians; several have treated her over several years, while others have seen her at least multiple times.

In determining whether a claimant is disabled, an ALJ undertakes a five-step sequential evaluation process pursuant to 20 C.F.R. §§ 404.1520, 416.920. This process was summarized by the Sixth Circuit Court of Appeals in Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 474 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry, which is the focus of this case, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

336 F.3d at 474 (internal citations omitted).

At the first step of the sequential evaluation process in the instant case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 20, 2001 and continuing until the time of the hearing. [Tr. 23.] At the second step, the ALJ found that Plaintiff's medically determinable impairments were severe within the meaning of the Regulations, see 20 C.F.R. §§ 404.1520(c), 404.1521, 416.920(c), 416.921. [Tr. 23.] Those impairments included: chronic low back pain secondary to degenerative disc disease; status-post L5-S1 laminectomy and fusion in 1989 and 2002; carpal tunnel syndrome, status-post bilateral release surgeries; tarsal tunnel syndrome, status-post release surgeries; peripheral neuropathy; depression; anxiety; somatoform disorder; obesity; fibromyalgia; and right shoulder impingement status-post acromionectomy. [Id.] At the third step, the ALJ found that Plaintiff's medically determinable

3

impairments did not meet or medically equal an impairment in the Listings. See generally 20 C.F.R. pt. 404, subpt. P, app. 1. [Tr. 24.] At the fourth step, the ALJ found that Plaintiff was unable to perform her past relevant work. See 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). [Tr. 28.]

At the fifth and final step, relying on the testimony of the VE and taking into consideration Plaintiff's age, educational background, past relevant work experience, and residual functional capacity (hereinafter "RFC"), the ALJ found that the Plaintiff was capable of making a successful adjustment to work existing in significant numbers in the national economy and on this basis denied her claim for DIB. [Tr. 28-29.]

An RFC evaluation is the assessment of a claimant's maximum remaining capacity to perform work-related activities despite the physical and mental limitations caused by the claimant's disability. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); see also Hickey-Haynes v. Barnhart, 2004 U.S. App. LEXIS 25567, *20 (6th Cir. Dec. 1, 2004); Brown v. Comm'r of Soc. Sec., 2001 U.S. App. LEXIS 708, *11 (6th Cir. Jan. 12, 2001). In this case, the ALJ found the Plaintiff's RFC to be the following:

> lift/carry/push/pull 20 pounds occasionally and 10 pounds frequently; stand/walk 6 hours in an 8-hour workday; and sit 6 hours in an 8-hour workday. The claimant requires a sit/stand option at one hour intervals. The claimant cannot climb ladders, ropes, or scaffolds, operate foot pedal controls, or work around concentrated temperature extremes, vibration, industrial hazards, or vibratory hand tools. She is limited to occasional bending, twisting, stooping, kneeling, crouching, crawling, flexion/extension or her wrists, climbing of ramps or stairs, pushing/pulling, reaching, and overhead work with the right shoulder and arm. The claimant requires entry level work with simple, repetitive procedures, no fast paced assembly lines, no rigid production schedules, and no frequent changes in work routines.

[Tr. 25.]

Although not per se required, the testimony of a VE is the preferred method of evaluating

whether a claimant is capable of returning to past relevant work or making a successful adjustment to other work found in significant numbers in the national economy.  See Janik v. Sec'y of Health & Human Servs., 1988 U.S. App. LEXIS 17043, *12 (6th Cir. Dec. 14, 1988); Hooper v. Sec'y of Health & Human Servs., 1984 U.S. App. LEXIS 13538, *9 (6th Cir. Dec. 3, 1984); O'Banner v. Sec'y of Health, Educ., & Welfare, 587 F.2d 321, 323 (6th Cir. 1978).  In this case, the VE testified that:

> the claimant could work in the following positions: 1) sales/counter clerk - light, unskilled work with 1,600 jobs in the state economy and 112,000 jobs in the national economy; 2) inspector/checker/examiner - light, unskilled work with 5,000 jobs in the state economy and 300,000 jobs in the national economy; and 3) inspector/checker/examiner - sedentary, unskilled work with 1,000 jobs in the state economy and 60,000 jobs in the national economy.

[Tr. 23 (internal citations omitted).]

The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the final decision of the Commissioner on August 16, 2006.  [Tr. 11.]  Plaintiff thereafter filed this action and the parties' motions for summary judgment [Record Nos. 14 & 15] are now ripe for review.

### III. ANALYSIS

#### A.  General Standard of Review

The essential issue on appeal to this Court is whether the ALJ's decision finding Plaintiff not disabled  is supported by substantial evidence.  42 U.S.C. § 405(g); Abbott v. Sullivan, 905 F.2d 918, 922 (6th Cir. 1990); see also Jones v. Sec'y of Health & Human Servs., 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  Substantial evidence is "such evidence as a reasonable mind shall accept as adequate to support a conclusion"  and is based on the record as a whole, taking into account what

5

evidence fairly detracts from its weight. Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984).

Furthermore, the Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir.1993); see also Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389-90 (6th Cir. 1999).

The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986). If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm. Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983); Studaway v. Sec'y of Health & Human Servs., 815 F.2d 1074, 1076 (6th Cir. 1987). Finally, "[t]he court may not try the case *de novo* nor resolve conflicts in evidence, nor decide questions of credibility." Bradley v. Sec'y of Health & Human Servs., 862 F.2d 1224, 1228 (6th Cir. 1988) (citing Gaffney v. Bowen, 825 F.2d 98, 100 (6th Cir.1987)).

B. Opinions of Treating Physicians

Plaintiff's sole argument on appeal is that the ALJ improperly discounted the opinions of her treating physicians, resulting in a disability and RFC determination not supported by substantial evidence. [R. 14, at 9-15.] For the reasons given below, the undersigned finds that the ALJ did not follow the guidelines set forth in 20 C.F.R. § 404.1527(d) which require a thorough discussion detailing the reasons for declining to afford the opinions of treating physicians controlling weight.

The ALJ, in his opinion, acknowledges the extensive medical record of the Plaintiff

supporting the existence of a variety of severe physical impairments, including back and extremity pain, diminished ranges of motion in her lower back and shoulder, parethesia and diminished sensation in her hands and feet, joint and knee pain, positive straight leg raising, "compromised right ankle reflexes," and problems with gait and her ability to perform motions such as squatting. [Tr. 23.] While some mental impairments are discussed in the record, the ALJ correctly notes that the medical evidence points to mild impairments at best and that these conditions do not support a finding of mental disability. [Tr. 24, 181-95.] Additionally, Plaintiff does not address these issues in her appeal, focusing instead on her physical impairments. [R. 14.]

The ALJ specifically discusses the opinions of three of Plaintiff's treating physicians, either discounting them entirely, or granting them "little probative value." [Tr. 26-27.] The ALJ also granted little or moderate weight to the two state-agency examining physicians who saw the Plaintiff, while relying primarily on the opinions of two state agency consulting physicians, who only reviewed the medical records. [Tr. 25-27.] The ALJ discounted the opinion of Dr. Gravett, Plaintiff's primary care physician, deeming it to be "conclusory." [Tr. 26.] Dr. Gravett stated in 2003, that he felt the Plaintiff was "totally disabled from performing any type of work. She was even incapable of light or restricted duty upon my last evaluation." [Tr. 407.] Dr. Gravett also provided, in 2004, an RFC assessment very similar to Dr. Bilkey, another treating physician. [Tr. 396-98.] This assessment was discounted by the ALJ for the same reasons he gave for rejecting much of Dr. Bilkey's RFC assessment; namely, that treatment notes were inconsistent with the opinion. [Tr. 27.]

Both Dr. Bilkey and Dr. Gravett, in their RFC assessments, stated that the Plaintiff would require 1-2 hours of bed rest during an 8-hour workday, under conditions more restrictive than those listed by the ALJ. [Tr. 321, 397.] Plaintiff was diagnosed in June 2004 with "failed back surgery

syndrome of the lumbar spine" and "proven S1 radiculopathy" by Dr. Reasor. [Tr. 456.] In November 2004, Dr. Davis noted that the Plaintiff had "17 of 18 tender points positive, compatible with a diagnosis of fibromyalgia." [Tr. 488.] While some areas appeared to be improved during Dr. Davis' examination, others, such as both forefeet being "completely numb to touch," "severe peripheral neuropathy," and "major depression," were not.

The ALJ rejects relevant portions of Dr. Bilkey's (and, by extension, Dr. Gravett's) RFC assessment by stating that those portions are not "supported by a preponderance of the evidence." [Tr. 26.] He goes on to note that Dr. Bilkey's notes prior to his RFC assessment do not mention bed rest and discuss a "good prognosis." [Id.] The ALJ then goes on to list evidence gleaned from several years of medical records, including comments about how much sun the Plaintiff appeared to have gotten over a weekend, or that she, on occasion, drove by herself, maintained a relationship with her boyfriend and was reported to be in the vicinity of horses, once being kicked by one. [Tr. 27-28.] The ALJ cites evidence concerning notes by treating physicians, as it deals with the effects of surgery, that is from 2002. [Tr. 26-27.] Much of the ALJ's analysis fails to acknowledge the evidence provided after the 2002 time period that might indicate that her previous surgeries did not fully address her impairments. The treating physicians, whose opinions are at issue, gave their assessments after 2002 and the ALJ points to no objective medical evidence in the record that contradicts the evidence relied upon by the treating physicians. In short, the fact that these physicians, in 2002, saw a good prognosis, cannot be considered substantial evidence in refuting the conclusion of those same physicians in 2003 and 2004 that the Plaintiff remains severely limited in her ability to work.

The regulations are quite specific in setting forth how an ALJ is to weigh the opinions of

various medical sources. 20 C.F.R. § 404.1527(d)(1)(2). This section clearly states that the opinions of examining physicians are to be given more weight than those of consulting physicians, who have not seen a claimant. Id. The regulations further state that treating physicians' opinions are to be given more weight than those of examining physicians. Id. If an ALJ concludes that the opinion of a treating physician should not be given controlling weight, the ALJ must provide a detailed analysis of why this decision was reached. Id.; See also, Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 242 (6th Cir. 2007); Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544-45 (6th Cir. 2004). The regulations, in § 404.1527(d)(2-6), list the areas that must be addressed by the ALJ when discounting, or giving less-than-controlling weight to, the opinion of a treating physician. As discussed above, it is clear that the ALJ did not properly support his decision to dismiss, in whole or in part, the opinions of several treating physicians.

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing the decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." Faucher v. Sec'y of Health & Human Servs., 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)).

Under a sentence-four remand, this Court has the authority to "enter, upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing." 42 U.S.C. § 405(g). Where, as in this case, there is insufficient support for the ALJ's findings, the appropriate remedy is reversal and a sentence-four remand for further consideration. See Faucher, 17 F.3d at 174; Tolliver v. Apfel;

2000 U.S. App. LEXIS 29211 at *8 (6th Cir. Nov. 8, 2000); Ridge v. Barnhart, 232 F. Supp. 2d 775, 786 (N.D. Ohio 2002); see also Jackson v. Chater, 99 F.3d 1086, 1091-92 (11th Cir. 1996) (holding that a sentence-four remand is appropriate where the Commissioner errs in some respect with regard to the decision to deny benefits).

## IV.  CONCLUSION

Therefore, for the reasons set forth above, it is recommended that: Defendant Commissioner's motion for summary judgment [Record No. 15] be denied; Plaintiff's motion for summary judgment [Record No. 14] be granted; and that the case be remanded to the Commissioner for further consideration consistent with this report and recommendation.

Specific objections to this Report and Recommendation must be filed within ten days from the date of service thereof or further appeal is waived. United States v. Campbell, 261 F.3d 628, 632 (6th Cir. 2001); Bituminous Cas. Corp. v. Combs Contracting Inc., 236 F. Supp. 2d 737, 749-750 (E.D. Ky. 2002).  General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004); Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within ten days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).

Signed January 3, 2008.



**Signed By:**
*Edward B. Atkins* ℰβᴀ
**United States Magistrate Judge**

10